May it please the court and your honors, Randall Wood appearing for the officers Will Mortensen and Mike Snyder and also thank you for inviting us to Roswell, I've never been to Roswell before so you can have a positive experience. Let me start out by saying that this is a tough case and I want everyone to understand that when a person loses their life the officers certainly regret that and that's certainly the case here. But this is also a case that I think is very unique, especially when you consider everything that's happening, everything that's facing these officers and especially when you consider that in the midst of everything that's happening there's this transformer that explodes and so we have a situation where this is a, the phrase is a tense, rapidly evolving, uncertain circumstance. Well that's this case. So that's why I think it's appropriate to consider both the facts that appeared, that happened before the transformer exploded and the facts that happened after because the facts that happened before are going to inform how the officers perceive what's going on. So what do the officers know? First of all. Can we talk about sort of, we have a limited scope of our review, right?  And so what aspect of your argument very precisely is allowed into this limited scope of review, this abstract question of law that we're allowed to consider because it seemed to me that there was a lot of revisiting of the district court's facts which we can't do at this stage. I've certainly tried in the appellate briefs and in my comments today to confine what do I see in the district court opinion and to not depart there from. That is what our appeal is based upon is what do we find from the district court opinion. Well the district court opinion says here's what the officers knew leading up to the explosion and here's what happened afterwards and that's what I'm confining this to. So your argument is that there was a segmented analysis that the district court should not have? Correct. Yes. I would say that under Barnes v. Felix and just in general it makes sense to me for the court to say okay let's look at how could the officers have perceived that explosion and some of the things that happened just seconds later. So the officers knew, and this is all coming right out of the appellate record and the district court opinion, they knew that from the outset this is a serious case. Mr. Rucker was not out there just committing minor misdemeanors or this didn't start out as a mental health call. He was a felon, serious felonies, violent felonies. He's out stealing cars one after the other. He is seen with a gun just hours before this happened. He shows the officers that he will not respond to a request for police contact, he will lead officers on a pursuit. So he's a person who was posing a threat to the safety of the city of Tulsa. I think you have very good arguments, but how do you overcome Judge Egan's ruling that we cannot review that a reasonable jury could find that no reasonable officer would think that the victim had a gun at the time he was lying down by the vehicle? So if I'm understanding the court's question, I would point the court to the assumption by the district court on page 21 of the opinion that says the officers could reasonably assume that that bang was a gunshot. Right, but despite that, the judge said a reasonable jury could find that no reasonable officer would think that he had a gun when he was lying there. And if a reasonable officer, if a jury found that, made that finding, that it was unreasonable of the officers to think that he had a gun, then shooting him on the ground was clearly established as being excessive use of force, was it not? Well, I can see you make, I think, excellent arguments that a jury is not going to make that finding, but that's, and you may well win a trial, but we have to accept the district court's ruling on whether there was sufficient evidence on a critical issue, and it did. And even if it was reasonable for them to think that what happened at the Transformer was a gunshot, she said a reasonable jury, but I won't repeat myself. But I just don't see how you can overcome that, so tell me what I'm missing. So as you know from the appellate briefing, our argument is, again, just drawing from the body of the universe of facts found by the court, the conclusions and assumptions used by the court are that at one point, the officers could reasonably believe, okay, there's a gunshot. Now, from that point, then, all right, what would the officers know? They would know, okay, he's alive, has the physical capability of shooting, he has a gun in his hand, and he has shot at the officers. And we don't have the officers reacted to that. They say, he's got a gun. And thereafter, and I think what the court was then becoming, the district court was becoming focused on, was thereafter, they didn't see a gun. Okay, and I acknowledge that. The officers did not see a gun. And when they later came up, you know, around the truck, they did not see a gun. But the officers could, you know, from the court, district court's own assumption and finding of fact, could conclude that man over there, at one point in time, had a gun. And that situation, okay, at what point does that situation change? That's where the officers are, you know, now kind of in a difficult position. That's an excellent argument, it seems to me. But it is inconsistent with what the judge said a jury could find. And we may disagree. If this were, if that was part of something we could review on appeal, we might say that Judge Egan goofed on that. But we can't do that. We have to accept her determination that when these shots were being fired, at least some of the shots, no reasonable, a jury could find that no reasonable officer could think that the victim had a gun. And once you've got that finding, that possible finding by the jury, you've got a clearly established excessive use of force. Well, I think you're making a good argument why she was wrong, but we can't review that. I read the district court opinion as focusing on a different approach to that. Maybe I'm misunderstanding the district court opinion. But I believe what really drove the district court's opinion was thereafter they never saw a gun. At some point in time, as the passage of time progresses, the officers can conclude he no longer poses a threat because they didn't see a gun and there was no other gunshot sound. Okay, so perhaps, let's read her ruling that way. I'm not sure that that's correct. But even then, you seem to be conceding at some point she's saying, you read her as saying at some point no reasonable officer, a jury could find that no reasonable officer could believe he had a gun at some point. But there were shots being fired for a long period of time. If they were ever shooting at him when they could not reasonably think he had a gun, then that was excessive use of force. Maybe there were some shots that were okay. But if there were any shots that were clearly unlawful use of force, excessive force, then we can't say that summary judgment should be granted, can we? Your Honor, I read the opinion differently and maybe I misread it. Okay, well maybe I misunderstood you. Yeah, I just believe that. When do you think, do you think that the judge said that there came a point when no reasonable officer could have thought that he had a gun? So that's where I come back to the facts, the universe of facts is found by the court. Of course, the court knows I emphasize that fact. The officers could reasonably believe that at one point in time he had a gun and had fired at the officers. So then thereafter, and we're not talking about a lot of time, because from the time that the transformer exploded until Officer Mortenson fired his last shot is 50 seconds. From the time that the transformer exploded until Officer Snyder fired his last shot is just under two minutes. So there's a time lapse there, and that's where the officers are now then being put into a difficult position of saying, okay, at some point in time under the universe of facts found by the district court, he had a gun, and his manifest intention was to shoot the gun and cause harm. But at some point they had to have known that he didn't have a gun, no reasonable officer. And when was that? If that was two minutes after the transformer, then you're okay. But I don't think that's what she's saying. And that's where I think it becomes very difficult to slot this case into any clearly established law. Where do you say, okay, the officers seeing certain behaviors and movements can decide or should have decided if the law is clearly established that after this certain period of time, then it becomes constitutionally unreasonable for them to continue to believe. Are you saying that even though at some point, let's say after 30 seconds, no reasonable officer could think he had a gun, that it was still not an excessive use of force to shoot at him, at the victim? Well, my position is that because of their distance, they're 60 to 75 feet away, they are seeing movement, and we know that they're calling out. They're not ignoring what's happening. They're calling out, he's got a gun, he's got a gun, drop the gun, don't you reach, or he's reaching. Okay. On that fact, as shown not only by the video but also by the district court opinion, they're perceiving a threat, and under that set of facts, I think it's reasonable for the officers to believe that man that just shot at us could continue to be a threat until such time as enough time has passed that they are saying we can now go forward and see what's behind that truck. In what way do you think that what the district court did wrong here runs afoul of Barnes? Because as you confirmed in your remarks, that that's your legal error, that you are contending we should have jurisdiction to review. So in what way did the district court's analysis run afoul of Barnes v. Fuller? So clearly the district court said I am separately segmenting those analyses. I think what the district court failed to consider further was to say that in a matter of just a few seconds, this man had posed a deadly threat to the officers. Now there's a gunshot, and I'm running out of time, but I want to emphasize that under essentially the same facts, the court said the other two officers that arrived on the scene get qualified immunity. What did the officers know? They've been investigating this man, came up on the scene, knew shots had been fired, were told shots had been fired. The district court says it was reasonable for the officers on the scene at first to believe that a shot had been fired, and they're granted qualified immunity. So I want to emphasize that point. Also, I want to emphasize that, again, because of the unique nature of this case, it's hard to find that this case fits into clearly established law. I think Fincher v. Berrientos has many significant factual differences. I think Zia Trust has many significant factual differences, and even the district court rejected Zia Trust as something that could be a similar case. And I want to emphasize also, as my time expires, the recent case of Zorn v. Linton, the Supreme Court issue where it's pounding home that it is not enough just to say, well, here's a principle of law that we're going to announce that the officers violated. You have to tie it to cases that have to be exact, but it has to be more close maybe than we had previously understood, more similar in terms of facts and claims and circumstances. So I urge the court to look at that case and consider that and to grant my officers qualified immunity in this difficult case. Thank you. Thank you, counsel. Good afternoon. Bob Blakemore for the Appali, the estate of Jacob Rucker. Responding to some of the things that Mr. Wood addressed, and I think that the court was at least implying, is the issue of jurisdiction. And I've been practicing for a long time. I've been practicing civil rights for a long time. And it's not always clear to me on these cases when there's a factual issue, a factual dispute versus a discreet legal issue. In this case, it seems to me, and we argue in the statement of jurisdiction in our brief, that the issue of whether it was reasonable for officers Mortenson and Snyder to believe that there was a threat is an inherently factual question. And we cite a couple of cases for that very issue, and that's Clerkley versus Holcomb and Finch versus Rapp, which both cases say that the issue of the reasonableness of an officer's belief is a fact issue. And we assert that that's really the overriding argument that's being made by the appellants in this case and on this appeal. But what about the argument that the appellant was making about Barnes? I mean, if ultimately the district court didn't conduct this analysis in the way that the Supreme Court teaches is the right way to do it, how can we affirm it? Well, one, I think that they're incorrect in the argument. And I realize that Barnes is a newer case, but we were able to find a couple of circuit cases, including one from the 10th, that have been decided since Barnes. One is Romero versus City of Lansing, Sixth Circuit, where the court says that they can still divide the incident into segments. But after Barnes, it's clear that they must consider the entire sequence. And in so doing, the reasonableness of an officer's use of deadly force may decline as the situation progresses. And that's Romero. And then the other one is 10th Circuit, Teats, which we also cite. And they're segmenting the case, again, post-Barnes into pre-restraint and post-restraint use of force. And I think when you look at what the district court did in this case, she clearly considered the totality of the circumstances and all the facts preceding the shots that are at issue in this case. For one, there were other claims for excessive force that we made that were earlier in this incident, and she said that those were reasonable, the use of force in those instances were reasonable. She did look at the fact that there was this purported some officer purportedly saw Mr. Rucker with a gun the day before. She considered the fact that he has his criminal record. And importantly, as discussed during the council's argument, she considered the popping of the transformer, which Mr. Randall refers to as the transformer exploding. I think that's, again, going into how you interpret facts and can dispute facts. We think it's more of a popping noise, and that was how the district court characterized it based on the video and audio. So if the court does have jurisdiction and you get into the issue of Barnes, I think that even though her decision predates Barnes, I think it's completely consistent with the Barnes holding and how circuit courts have interpreted Barnes since it's been decided. We do have jurisdiction if we assume the truth of what the district court said. We don't have jurisdiction to contest the district court's determination that a reasonable jury could find that no reasonable officer would think he had a weapon. But if we take that as given, then there's a question about whether the law is clearly established in that circumstance, given everything that happened up to that time. And I believe it was under Fancher. And to summarize what I think that this case is about and what Fancher is about is that deadly force initially justified becomes unconstitutional when the threat dissipates. And in Fancher, which is a 2013 case, well before the incident in this case, there was a deputy who encountered a suspect. The suspect grabbed for his service weapon. They struggled for the service weapon. Then the deputy tased. His name was Dominguez, and he let go of the weapon. Then he got into the squad car. There was a struggle inside of the squad car, shoots him in the chest. He slumps over. The car rolls backwards, and then he shoots him five or six seconds later six times. The circuit ruled that while the first shot was reasonable, the remaining shots were not because by that point, even though it was just seconds later, it was clear that the suspect no longer posed a threat. And I think that that's precisely the case here. And if you do accept the court's finding that even after that initial pop, which could be perceived as a gunshot, reasonably perceived as a gunshot, there was sufficient time for both of the officers to reassess the threat, and that also they were both had cover. Officer Mortenson was under a stairwell. Officer Snyder was behind the squad car. There were no more pops after that. They knew that Mr. Rucker was badly wounded. He's on the ground. He never gets up into, like, a shooting stance. And then three of the officers that were involved in this, including one Mortenson, all testified that they never saw a gun, never saw anything resembling a gun. So there was nothing for him. There was no weapon for him to reach for. And when you put all that together, then there was sufficient time to reassess, and I think Fancher is very much on point in establishing that this is a very similar situation again where perhaps that deadly force was initially justified, but it dissipated based on the circumstances. The appellant points us to or asks us to consider the grant of qualified immunity to the other officers, the two other officers, to George and Myers, and is that instructive or how should that inform our thinking about the instant appeal? I don't think it has an impact because George and Myers, they arrive 40 seconds later. They did not have the benefit of viewing and being able to see Mr. Rucker during the entire incident. I think that's what it came down to for the court as to why she granted qualified immunity to those two officers, that unlike Snyder and Mortenson, in the court's view that George and Myers did not have sufficient time to reassess, they're coming in and it's very much they're going off of what they're hearing from Snyder. As we state in our brief, we disagree with the court's ruling, but I don't think it impacts the analysis. If there are other questions that the court has, I'm happy to answer those. Well, you have some more time if you want to speak, but you don't have to. I kind of view these as everything's in the brief, and when the court has questions, that's kind of what we're here to do is to answer those questions, and if there are no further questions. Okay. Thank you, counsel. Thank you. Case is submitted. Counsel are excused.